Cite as 2022 Ark. App. 54

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-21-79

|  |  |
|---|---|
| TABITHA AND KEN LANCASTER<br>APPELLANTS<br><br>V.<br><br>ROGERS CONSTRUCTION, INC.<br>APPELLEE | **Opinion Delivered** February 2, 2022<br><br>APPEAL FROM THE CLARK<br>COUNTY CIRCUIT COURT<br>[NO. 10CV-11-19]<br><br>HONORABLE GREGORY L.<br>VARDAMAN, JUDGE<br><br>AFFIRMED |

## MIKE MURPHY, Judge

This is the third time this case has come before this court. It was dismissed twice, without prejudice, for lack of jurisdiction. *Lancaster v. Rogers Constr., Inc.*, 2020 Ark. App. 514, 612 S.W.3d 772; *Lancaster v. Rogers Constr., Inc.*, 2019 Ark. App. 582. The jurisdictional issues are resolved, and we now consider the case on the merits. Tabitha and Ken Lancaster are appealing the November 28, 2018 order of the Clark County Circuit Court granting the appellee's motion for summary judgment. On appeal they argue that the circuit court misinterpreted the contract and that a genuine issue of material fact remains to be litigated. We affirm.

In April 2006, the Lancasters hired appellee, Rogers Construction, Inc., to design and build a home for them in Arkadelphia. Construction was completed in May 2007. In August 2010, the Lancasters noticed damage to the house: the front door was sinking, there were gaps between the brick and the slab, cracked bricks, cracked sheetrock, and sweating windows. The Lancasters allege that the damage was caused because Rogers did not properly compact the soil

or use a monolithic slab for the foundation. They brought suit against Rogers, its general contractors, and its subcontractors for breach of express contract, breach of implied contract, breach of implied warranties, negligence, strict liability in tort, and fraud by misrepresentation or concealment. Rogers moved for summary judgment, and the remaining defendants were eventually dismissed. The only issue before this court is whether the circuit court erred in granting that motion for summary judgment.

Our summary-judgment standard is well settled. Summary judgment may be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Nelson v. Ark. Rural Med. Prac. Loan & Scholarship Bd.*, 2011 Ark. 491, at 8, 385 S.W.3d 762, 767. The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *McGrew v. Farm Bureau Mut. Ins. Co. of Ark.*, 371 Ark. 567, 268 S.W.3d 890 (2007). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Greenlee v. J.B. Hunt Transp. Servs.*, 2009 Ark. 506, 342 S.W.3d 274.

On appellate review, this court determines if summary judgment was appropriate by deciding whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings but also on the affidavits and other documents filed by the parties. *Id.* As to issues of law presented, our review is de novo. *Barrows/Thompson, LLC v. HB Ven II, LP*, 2020 Ark. App. 208, at 12–13, 599 S.W.3d 637, 646.

Rogers moved for summary judgment on the basis of a provision in the contract between the parties for the construction of the home. That provision provided that

> [o]wner in no way holds Contractor responsible for damage to completed structure resulting from acts of God, including but not limited to, erosion, floods, earthquakes, shifting or settling of ground and other such natural occurrences.

Rogers generally asserted that this precludes the Lancasters from seeking any and all remedies for causes of action associated with damages stemming from the shifting and settling ground.

The Lancasters replied that Rogers may not exonerate itself from its failure to abide by the terms of the contract by way of a force majeure clause and that breach of contract remains actionable. After considering the record and arguments, the circuit court granted summary judgment and dismissed the Lancasters' entire complaint. In so doing, it reasoned that the undisputed cause of the problems with the house was due to the shifting and settling of the ground, and any damages therefrom were not actionable pursuant to the terms of the contract.

In their brief to this court, the Lancasters make no argument concerning any of the causes of action in their complaint other than the breach-of-contract issue. They do not argue below or to this court how any claim other than breach of contract should have survived summary judgment. Because the Lancasters make no additional arguments concerning their other claims on appeal, they have abandoned those claims. *See Durden v. City of Van Buren*, 2021 Ark. App. 357, at 4 n.1, 635 S.W.3d 342, 345 n.1; *see also Crockett v. Essex*, 341 Ark. 558, 562, 19 S.W.3d 585, 588 (2000) ("[N]o argument regarding a negligence claim is made in this appeal, and we conclude that the Crocketts have abandoned any claim that summary judgment was erroneously

3

granted for that cause of action as well."). The question then is should the breach-of-contract claim—and only the breach-of-contract claim—have survived summary judgment.

To succeed on a breach-of-contract claim, a plaintiff must show (1) the existence of a contract, (2) an obligation on the part of the defendant under the contract, (3) a failure to perform the obligation, and (4) resulting damages. *Barrows/Thompson, LLC*, 2020 Ark. App. 208, at 15, 599 S.W.3d at 647.

The Lancasters first assert that they contracted with Rogers for a monolithic slab, which they did not receive. In support, they point to the deposed testimony of their expert, Craig Evan, an engineer. As abstracted, Evans said that

> the brick veneer had several diagonal settlement cracks around the front of the house. When I say "settlement cracks" that typically means moving downward in engineering profession. I am telling you that those cracks could be caused by the building moving down but also could be expansive soil. When it dries out, it shrinks; when it gets wet, it expands. So it is movement in the foundation. I cannot always guarantee that it is settlement, but usually when I mention "settlement" it is usually under the assumption it is moving down as opposed to moving up. It is the earth moving. Based on my observations, this house had some very poor soil, plastic soil that had a lot of movement. The settling of the soil caused the house to move downward. The next reference in my report states that the brick around the front and back porch were separating from the porch slab. That was caused by settling of the ground. There is also a reference to several sheet rock cracks around the front, sides, and along the rooms along the front of the house. The same thing caused that, the settling of the ground under the house.
>
> . . . .
>
> In my report the next bullet point states, "this area of Arkansas is known for expansive soils. The original construction did not build in a way that would keep expansive soils from damaging this structure.
>
> . . . .
>
> I believe the damage that was done to the Lancasters' home after it was built in this case was caused by the house sinking, or settling because the soils underneath it settled.
>
> . . . .

I mentioned the term monolithic slab. A monolithic slab is more of a post tension slab, designed to move. Some builders would define it as just a slab poured all in one piece, the footings and the slab all poured integral. A monolithic slab functions as a slab that moves integral with the structure. Monolithic slabs have the footer or chain wall all working at the same time. When your wife puts a casserole dish flat down after washing, it seems like it is immovable for a minute. That is the same idea, it creates a rigid means, whatever happens underneath it is not going to affect the other part. There was not a monolithic slab as I define it poured on this house. Typically a builder will pour a foundation slab that only has temperature and shrinking steel. That means it only has enough reinforcing steel to keep it from the minor cracks caused by temperature and shrinkage of the drying concrete. Typically, builders do not ever add enough steel to function anywhere near a monolithic slab that would support the structure without soil-bearing strength.

My use of the term monolithic slab means one that cannot move whereas builders use that term to mean one that was poured all in one piece.

The Lancasters further argue that the waiver-of-damages provision does not and cannot apply because, even though the damage to the house was caused by the shifting or settling of the ground, had Rogers properly compacted the soil and built the house on a monolithic slab as it contracted to do, the damage would have been avoided or, at a minimum, mitigated.

On appeal, Rogers makes three general challenges to the Lancasters' arguments. First, it asserts that there was nothing in this record to indicate that the Lancasters contracted for a specific type of foundation. Second, it explains that there was no breach because, as Evans testified, there are different definitions between builders and engineers of the term "monolithic slab," and Evans only said that there is not a "monolithic slab" as an engineer would define it. Third, it argues that, regardless of the type of slab poured, the damage was caused by conditions specifically contemplated and excluded from liability pursuant to the contract.

Regarding its first argument, Rogers conceded in its reply to the Lancasters' response to its motion for summary judgment that "[i]t is true that the contract between the parties called for the house to be built upon a 'monolithic slab.'" Despite the lack of evidence that the parties,

5

in fact, contracted for a certain type of slab, Rogers may not now change its position on appeal. Rogers is bound by the scope of the arguments made to the circuit court. *T.S.B. v. Robinson*, 2019 Ark. App. 359, at 6, 586 S.W.3d 650, 654.

Rogers asserts that the Lancasters did not meet proof with proof regarding the type of slab poured. The Lancasters only established through their expert that a monolithic slab, as described by an engineer, was not provided. The Lancasters argue that this leaves an issue of material fact unanswered.

Specifically, the Lancasters argue that ambiguity of the term "monolithic slab" creates doubt concerning an issue to be litigated such that summary judgment was inappropriate. But the question asked in deciding summary judgment is not whether any fact is in dispute but is any fact in dispute material. *Durden*, *supra*. Substantive law identifies which facts are material. *Id*. A material fact is one so significant to the matter at hand that if it were different, the result reached in the given case would also be different. *Id*. The Lancasters contend that on the basis of Evans's testimony, the type of foundation poured is material: had a certain foundation been provided, the damages to the Lancasters' home may have been less or nonexistent. We disagree—while this is a disputed fact—it is immaterial because of the damages clause and the testimony of the Lancasters' expert.

In general, damages recoverable for breach of contract are those damages that would place the injured party in the same position as if the contract had not been breached. *Optical Partners, Inc. v. Dang*, 2011 Ark. 156, at 14–15, 381 S.W.3d 46, 55. Here, however, the Lancasters contracted to not hold Rogers responsible for damages from shifting soil. Their expert said the settling of the soil is what caused the house to move and caused the resulting damage. Parties are

6

free to contract on any terms that do not violate public policy or Arkansas statutes. *Conway Com.*

*Warehousing, LLC v. FedEx Freight E., Inc.*, 2011 Ark. App. 51, at 7, 381 S.W.3d 94, 99. The

Lancasters do not assert that the terms are against the law or public policy. Under a breach-of-

contract analysis, the Lancasters' argument fails. The circuit court did not err in granting Rogers

Construction's motion for summary judgment.

Affirmed.

GRUBER and VAUGHT, JJ., agree.

*Ashcraft & Associates*, by: *Cecilia Ashcraft* and *G. Christopher Walthall*, for appellants.

*McMillan, McCorkle & Curry, LLP*, by: *F. Thomas Curry*, for appellee.